IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARY E. COLEMAN

  Plaintiff          :

              :

 v              Civil Case No. L-10-2297

              :

COUNTRYWIDE HOME LOANS, INC., et al. :

  Defendants        :

o0o
**<u>MEMORANDUM</u>**

  This case arises out of the alleged failure of Defendants, Countrywide Home Loans, Inc. ("Countrywide") and Mortgage Information Services, Inc. ("MIS"), to credit to the account of Plaintiff Mary Coleman funds in their possession that Coleman claims would have remedied the default on her mortgage. Coleman brings suit against Countrywide (the lender), Countrywide Financial Corporation ("CFC", Countrywide's parent company), Bank of America (which acquired CFC on July 1, 2008), MIS (the settlement agent), and Bank of New York Mellon (the trustee of the deed of trust). Her complaint alleges Breach of Contract, Negligence, Negligence Arising out of Fiduciary Duty, and Tort Arising from Breach of Contract. All stem from damages allegedly incurred as a result of the foreclosure sale of Coleman's home subsequent to her default.

  This case was removed from the Circuit Court for Harford County, Maryland on August 20, 2010, and on September 10, 2010 both MIS and the other Defendants moved to dismiss the Complaint. That same day, Coleman moved for leave to amend her Complaint to reduce the recovery sought from $300,000 in compensatory damages and $1,000,000 in punitive damages

1

to $74,999, which she asserts "shall cause the United States District Court for the District of Maryland to lose jurisdiction as the amount in controversy is less than the jurisdictional limit." Pl.'s Mot. for Leave to Amend 1, Docket No. 23.

There are thus three motions now pending: (i) Motion to Dismiss by Defendant MIS (Docket No. 26), (ii) Motion to Dismiss by all remaining Defendants (Docket No. 21), and (iii) Coleman's Motion for Leave to Amend her Complaint (Docket No. 23). The Court has reviewed the papers, and no hearing is deemed necessary. See Local Rule 105.6 (D. Md. 2010). For the reasons stated herein, the Court will, by separate Order, GRANT Coleman's Motion for Leave to Amend. As will be explained, however, a reduction of the *ad damnum* clause to $74,999 does not divest this Court of jurisdiction over the case. Therefore, having considered the merits of Defendants' Motions to Dismiss, the Court will also GRANT both Motions and DISMISS the case.

I.   FACTUAL BACKGROUND

The following are the facts as alleged in Coleman's Complaint. In 2005, Coleman refinanced her home with a loan from Countrywide in the amount of $153,725. As a condition of the closing, Countrywide required her to use $16,470 of the proceeds to pay off an unsecured education loan held by USA Funds. On November 16, 2005, MIS issued Coleman a check for that amount, payable to USA Funds. Coleman forwarded the check but, for reasons unknown, USA Funds returned it. Coleman contacted both MIS and Countrywide for instructions, but was never told what, if any, action she should take. The check therefore remained uncashed, and the funds remained in an account held by either MIS or Countrywide.

In June of 2006, Coleman ceased making payments on her mortgage. On October 29, 2006, Countrywide sent Coleman a letter alleging default under the Deed of Trust and demanding repayment in full. On November 15, 2006, Countrywide initiated foreclosure proceedings in the Circuit Court for Harford County, Maryland. Coleman claims, among various other defects relating to the foreclosure proceedings, that though she informed Countrywide that she disputed the debt and pointed out that the $16,470 in its possession was more than enough to cover her arrears, Countrywide refused to use those funds to cure the default.

On December 1, 2006, Coleman's home was sold at a foreclosure auction. On July 7, 2007, MIS finally paid Coleman the $16,470.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead plausible, not merely conceivable, facts in support of his claim. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). The complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965. The court must, however, "assume the veracity [of well-pleaded factual allegations] and then determine whether they plausibly give rise to an entitlement of relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

## III.  DISCUSSION

### a. Coleman's Motion to Amend the Complaint

The Court turns first to Coleman's Motion to Amend her Complaint to reduce the damages sought to $74,999. A party may amend her pleading once as a matter of course within

3

21 days after service of a motion under Rule 12(b)(6). Fed. R. Civ. P. 15 (a)(1)(B). Additionally, the Defendants have stated that they do not oppose Coleman's Motion insofar as she seeks to amend the monetary relief demanded, though they dispute the effect of the amendment. Accordingly, the Court will grant the Motion for Leave to Amend.

Coleman is incorrect, however, in her claim that a reduction of the amount in controversy to one dollar below the requisite jurisdictional amount found in 28 U.S.C. § 1332 will cause this Court to lose jurisdiction and require a remand. Coleman presumably relies on 28 U.S.C. § 1447(c), the portion of the removal statute that states, "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." It is well settled, however, that while a court may determine at any time that subject matter jurisdiction is lacking, such jurisdiction is assessed as of the time suit was filed. Porsche Cars N. Am., Inc. v. Porsche.net, 302 F.3d 248, 255–26 (4th Cir. 2002) (citing Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991)). The conditions creating diversity jurisdiction, including the amount in controversy, need not survive through the life of the litigation. Id. Accordingly, despite the addition of the above-quoted language to the removal statute in 1988, it remains true today that if "the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 292–93 (1938).

### b. Defendants' Motions to Dismiss

The Court therefore turns to the Defendants' Motions to Dismiss. Both advance roughly the same arguments, so they will be considered as one. Defendants argue that Coleman's claims are barred by both the doctrine of *res judicata* (i.e., claim preclusion) and by the expiry of the

statute of limitations. Because the Court finds that Coleman's claims are precluded by the foreclosure judgment, it need not address the issue of when Coleman's cause of action would have accrued for purposes of the statute of limitations.[1]

"It is well established that the doctrine of *res judicata* bars the relitigation of matters previously litigated between parties and their privies, as well as those claims that *could have been asserted* and litigated in the original suit." Anyanwutaku v. Fleet Mortg. Group, Inc., 85 F. Supp. 2d 566, 570 (D. Md. 2000). In analyzing the applicability of *res judicata*, a court must consider the following elements: (1) whether the parties are the same as, or in privity with, the parties to the earlier dispute; (2) whether the cause of action presented is identical to the one determined in the prior adjudication; and, (3) whether there was a final judgment on the merits in the initial action. Id. at 570–71.

According to the Complaint, the Substitute Trustee filed a foreclosure proceeding in the Circuit Court for Harford County, labeled civil action no. 12-C-06-003035, on November 15, 2006. Coleman, having been previously informed of her default under the Deed of Trust, was aware of the proceeding and sent a letter to Countrywide's counsel on November 21, 2006, "disputing the debt." Pl.'s Compl. 6, Docket No. 3. According to the docket in the foreclosure action, the sale was ratified on January 9, 2007, and the auditor's report was ratified on March 15, 2007.

The Defendants argue that the claims Coleman raises in the instant suit are precluded because they could have been litigated in the foreclosure action. The Court agrees.

---

[1] Though it is unnecessary to reach the merits of Coleman's case, the Court notes in passing that Coleman has presented no evidence that Countrywide and MIS were required to apply the $16,470 towards her delinquent payments as she requested. Nor does Coleman allege that, had the funds been so applied, she would have been able to resume timely payment of her mortgage obligations and avoid the consequences of foreclosure.

5

Each element required for *res judicata* to apply is present. First, since Coleman did not file an exception to the foreclosure sale or take an appeal from the Circuit Court's judgment, the foreclosure proceeding is indisputably a final judgment on the merits of the foreclosure.

Second, the parties are the same as, or in privity with, the parties in the foreclosure dispute. The nominal plaintiff in the foreclosure action was Howard Bierman, the Substitute Trustee of the Deed of Trust. The Complaint alleges that Bierman's law firm served as counsel to Countrywide, and that the Deed of Appointment appointing Bierman Substitute Trustee was executed by Countrywide for Bank of New York, as holder of the Note secured by the Deed of Trust. The Complaint also states that MIS acted as Countrywide's agent, and that Bank of New York, CFC, and Bank of America are chargeable with the actions of their agents, Countrywide and MIS. In essence, Coleman's Complaint is itself rooted in the premise that the Defendants in the instant action are the same as the parties to the foreclosure action or in privity with them.

Third, the cause of action in this case is, at base, the same as that in the foreclosure action. Coleman acknowledges as much in her Opposition Memorandum, in which she explains that she seeks damages "[to] re-compensate her for the ratification of the foreclosure sale of her home which occurred by the failure of the Defendants, individually and collectively, to apply the immediately available funds . . . to cure her default pursuant to her request . . . ." Pl.'s Resp. 2, Docket No. 31. In essence, Coleman seeks to attack the validity of the foreclosure-inducing default.

Both Maryland courts and this Court, applying Maryland law, have consistently rejected the type of collateral attack on a foreclosure proceeding that Coleman now attempts. For example, in Anyanwutaku v. Fleet Mortg. Group, Inc., 85 F. Supp. 2d 566 (D. Md. 2000), the plaintiff contended that the defendant mortgage companies had failed to properly credit loan

payments to his account, contributing to his default. This Court granted summary judgment to the defendants, holding that the plaintiff's claims, including fraud, breach of contract, emotional and mental anguish, and negligence, were fundamentally based on the previous foreclosure action. In Fairfax Savings, F.S.B. v. Kris Jen Ltd. P'ship, 338 Md. 1, 31 (1995), the Maryland Court of Appeals found that "[a]llegations that there was no foreclosure-triggering default negate, contradict, and in that sense nullify an essential foundation for the foreclosure judgment." It is just such nullification that the operation of *res judicata* seeks to avoid. The Court of Special Appeals held that the plaintiff had the opportunity to litigate its defense, that there had been no default, in the foreclosure proceeding, and that the final foreclosure judgment precluded such a claim in the case then at bar. Id.

In this case, as in those cited above, the proper forum for the claim that no foreclosure-inducing default occurred was the foreclosure proceeding itself. Coleman knew of the proceeding and had a full and fair opportunity to present her defenses. To allow her now to claim damages stemming from the ratification of the foreclosure sale which she failed to contest would permit her impermissibly to attack a final judgment of the Circuit Court for Harford County.

Coleman argues that Fairfax Savings is distinguishable because the plaintiffs in that case were sophisticated business owners, represented by counsel, who filed exceptions to the sale, whereas she was acting *pro se* and was largely unaware of her rights. Coleman claims that she did not file exceptions to the sale, did not request a hearing, and did not appeal the foreclosure because she "did not know that she could and should do so, nor how to, had she known." Pl.'s Resp. 6, Docket No. 31. While the Court is sympathetic to Coleman's position, to allow a plaintiff to re-litigate a claim on the basis that she lacked the wherewithal to prosecute it to her

7

satisfaction the first time around would lead to just the kind of inconsistent decisions and "expense and vexation attending multiple lawsuits" that the doctrine of *res judicata* was intended to prevent. Montana v. U.S., 440 U.S. 147, 153–54 (1979). Coleman has not cited, and the Court's own research has failed to uncover, a single case where claims like those she presents here have been allowed to proceed.

## IV.  CONCLUSION

For the foregoing reasons, the Court will, by separate Order of even date, GRANT Coleman's Motion for Leave to Amend (Docket No. 23), and also GRANT Defendants' Motions to Dismiss (Docket Nos. 21, 26) and DISMISS the case.


Dated this 3rd day of December, 2010.

/s/
_____
Benson Everett Legg
United States District Judge